UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| KEITH SHANNON, | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | NO.  EP-23-CV-00384-KC-MAT |
| | § | |
| OMNI LOGISTICS LLC, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## REPORT AND RECOMMENDATION

Before the Court is Defendant Omni Logistics LLC's Motion for Summary Judgment ("Motion"), ECF No. 110, Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 120, in the above-captioned case (the "Case"). United States District Judge Kathleen Cardone referred the motion to the undersigned for determination pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 1(c) of Appendix C to the Local Rules. For the reasons that follow, the Court **RECOMMENDS** that Omni's Motion be **GRANTED** and that Plaintiff's Motion be **DISMISSED.**

### I.    Background

Unless otherwise indicated, the following facts are taken from Omni Logistics LLC's Proposed Undisputed Facts ("PUF"), ECF No. 110-1.[1] On September 4, 2018, Keith Shannon ("Plaintiff") began working as a warehouse worker at TEI Logistics, LLC, a predecessor to Omni

---

[1] As explained below, Plaintiff did not file a response to Omni's Motion despite Omni expressly warning Plaintiff of the consequences flowing from a litigant's failure to respond to a motion for summary judgment. *See* Notice to Pro Se Litigant Opposing Mot. for Summ. J. as Required by Standing Order Governing Mots. For Summ. J. 2, ECF No. 110-2, ("If you fail to submit evidence contradicting the defendant's version of the facts, your claims may be dismissed without further notice."). As a result, because Plaintiff failed to dispute Defendant's version of the facts, the Court accepts Defendant's proposed undisputed facts as true, and relies on them in resolving the instant motions. *See* Fed.

Logistics. *See* PUF ¶1. On January 1, 2019, Plaintiff's employment, including job duties, location, and supervisor, was transferred to Omni Logistics LLC. *Id.* ¶2. As a material handler, Plaintiff was responsible for "[t]he processing, verification, manifesting, recording of documents" among other tasks, such as using forklifts and the loading and unloading of trailers for customer shipments before departure and after arrival. *See id.* ¶3. Months after working at Omni, Plaintiff's supervisor, Felipe Moreno, had difficulties getting Plaintiff to do his assigned work. *See id.* ¶4.

On August 21, 2019, Felipe Moreno approached Plaintiff and told him he saw him distracted at work and suggested he take time off if he needed to fix his affairs. *Id.* ¶5. Mr. Moreno also commented on Plaintiff's poor work performance at work. *Id.* Mr. Moreno, at Warehouse Supervisor, Ignacio Zacarias's[2] suggestion, told Plaintiff to go to the office, but Plaintiff returned soon after. *Id.* Mr. Moreno then asked Plaintiff to wait for Mr. Zacarias in the cafeteria. *Id.* Plaintiff told him no and started yelling at Mr. Moreno to get out of his face while also moving closer to him. *Id.*

Mellie Madrid-Lespron, Omni's Human Resources Generalist, investigated this August 21, 2019, incident between Plaintiff and Mr. Moreno by collecting written accounts of the event from witnesses. *Id.* ¶6. Samuel Sanchez, Warehouse Manager, provided his account corroborating Mr. Moreno's account of Plaintiff yelling at him. *Id.* Plaintiff's account of the August 21, 2019 incident states he responded "get the hell out of my face with that nonsense" in a condescending tone to Mr. Moreno when he approached Plaintiff. *Id.* ¶7.

---

R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . . consider the fact undisputed for purposes of the motion.").

[2] Warehouse Supervisor Ignacio Zacarias is referred to as both Zacharias and Zacarias in different parts of the record. The Court will refer to him as Mr. Zacarias.

After the August 21, 2019, incident, Mr. Zacarias emailed Ms. Madrid-Lespron requesting disciplinary action against Plaintiff for his insubordination, specifically that "he refuse[s] talk with me by reason he don't want a close door, **is a Refusal of failure to follow directions from management."** *Id.* ¶ 8 (emphasis in original).

Following the August 21, 2019, incident, Plaintiff was temporarily assigned to different departments within Omni. *Id.* ¶ 9. He was then permanently assigned to the Foxconn department on about September 10, 2019, with Carlos Perez as his supervisor.[3] *Id.* During his time at the Foxconn department, Plaintiff would regularly have conflicts with Mr. Perez about his management of the department and complain about being assigned other people's work. *Id.* ¶ 10. On May 18, 2020, Plaintiff moved past Felipe Moreno in the breakroom and told him to "get the fuck out of my way." *Id.* ¶11. Plaintiff admitted his actions in a written statement to Ms. Madrid-Lespron and explained that he acted that way because he alleged he had been threatened by an individual with a firearm earlier that day. *Id.* He also explained that he said this to Mr. Moreno because he had not been invited to a group lunch on May 16, 2020 and because of three prior occasions where Mr. Moreno made disparaging remarks toward him and those who fraternize with him such as "pinche" and "vato." *Id.*

Later, Plaintiff was transferred to the Southbound department (also referred to as GHUB/BTS). *Id.* ¶13. On August 11, 2020, while working at the Southbound department, Plaintiff was asked to assist his old department, the Foxconn department. *Id.* ¶14. Plaintiff refused to help the Foxconn department while assigned at the Southbound department. *Id.* ¶15. Plaintiff questioned Pablo Gonzalez, Omni's Warehouse Manager, why he was the only employee being

---

[3] Foxconn is Omni's client. It appears Omni has dedicated a department to service Foxconn orders.

asked to assist the Foxconn department, despite being the only employee with prior experience in the Foxconn department *Id.* ¶¶16-17.

On August 14, 2020, Ms. Madrid-Lespron emailed Samuel Sanchez, Ignacio Zacarias, and Rick Moya, her recommendation after reviewing Plaintiff's August 11, 2020 complaints. *Id.* ¶18. She had spoken to Plaintiff and recommended "he doesn't refuse to any type of work in any particular area. I also asked for him to follow the direction given from his lead, supervisor, or manager and if he for any reason feels any type of retaliation and or discrimination, to follow up with [his] supervisor or manager, but never leave work unattended as work could have a deadline or might be urgent." *Id.* Ms. Madrid-Lespron also recommended to Samuel Sanchez and Ignacio Zacarias, that they cancel their previously agreed-to final write up of Plaintiff and to train other employees on the Foxconn area so other employees, not only Plaintiff, would be able to assist when needed. *Id.*

On August 31, 2020, Plaintiff signed a meeting/training Sign-In Sheet about his Daily Work/ Break & Lunch / Vacation, issued by Mr. Perez, listing his designated break times and lunch period. *Id.* ¶19. Plaintiff was given two daily breaks and the sign in sheet indicated that he was allowed to leave early to "reach sun metro (Bus) and the company gives you the opportunity to leave." *Id.*

On September 10, 2020, Mr. Perez emailed Ms. Madrid-Lespron concerning his frustrations with Plaintiff's negative attitude and insubordination when asked to work. *Id.* ¶20. Mr. Perez also noted that Plaintiff would not respect his break and lunch times as agreed. *Id.*

On September 21, 2020, Omni's client, Foxconn, alerted Omni of errors in deliveries missing items listed on their associated inventory list. *Id.* ¶21. These errors resulted in tariff costs,

4

delays in shipment, production line closures, and increased scrutiny from customs officers. *Id.* Reviewing its files from that shipment, Omni determined that the errors were caused by Plaintiff's failure to follow instructions. *Id.* ¶22.

The following month, on October 15, 2020, Mr. Perez notified Ms. Madrid-Lespron about the errors in the Foxconn order, his determination that Plaintiff was at fault in them, and their associated costs to Omni. *Id.* ¶25. That same day, Plaintiff sent a written complaint to human resources about Eduardo [LNU] and Carlos [LNU]'s requests for Plaintiff to assist them in the warehouse. *Id.* ¶26 (these people are not more specifically identified in Plaintiff's complaint to HR).

Four days later, on October 19, 2020, Omni issued Plaintiff a final written warning for unsatisfactory performance and listed the two errors he made in the Foxconn department as statements of the problem. *Id.* ¶27. The final written warning also indicated that on "several occasions, Keith has been given directive from the management team and lead Carlos Perez to complete some work assignments such as to load/unload trailers and Keith refuses. Keith will often ask the management team what other employees are doing and why does he have to work on that specific job duty and not the other employees." *Id.*

Two days later, Plaintiff did not attend work on October 21, 2020. *Id.* ¶28. That same day, in an email to Ms. Madid-Lespron, Mr. Zacarias explained "[j]ust for your record for 2nd consecutive day Keith Shannon don't show up to work today send a TXT msg to Carlos Perez inform him that don't coming to work." *Id.* A week later, on October 28, 2020, Plaintiff refused to perform his job duties when Mr. Zacarias and Mr. Perez had "asked [him] to offload a trailer of TORO material." *Id.* ¶29. Both supervisors and Plaintiff discussed this with Mr. Gonzalez,

Warehouse Manager, and again after a second opportunity to accept the work assignment, Plaintiff refused. *Id.*

A day later, October 29, 2020, Omni issued a termination notice to Plaintiff citing insubordination on two occasions that week and past "coaching's [sic] by management team and HR, and Final Warning on 10/19/20." *Id.* ¶30.

On August 17, 2021, Plaintiff filed a dual Charge of Discrimination against Omni with the Equal Employment Opportunity Commission ("EEOC") (Charge No. 31C-2021-01066C) and the Texas Workforce Commission Civil Rights Division ("TWCCRD") (Charge No. 1B21113). *Id.* ¶31. Plaintiff brought the same allegations in these charges as he does in this case. The TWCCRD dismissed Plaintiff's charge on June 20, 2023, and the EEOC dismissed his charge on July 13, 2023. *Id.* ¶¶32, 33.

Plaintiff then filed this lawsuit on October 13, 2023. *See* Mot. to Proceed in Forma Pauperis, ECF No. 1; Compl., ECF No. 13. Plaintiff filed his Amended Complaint on April 23, 2024. *See* First Am. Pl.'s Original Compl., ECF No. 22. Plaintiff's Amended Complaint is the live pleading in this case.

Omni moved for summary judgment on May 5, 2025. *See* Def.'s Mot. for Summ. J., ECF No. 110. On that same day, Omni also filed and served Plaintiff with a notice informing him of the consequences resulting from a litigants' failure to respond to a motion for summary judgment within the time period prescribed by the Federal Rules of Civil Procedure and this Court's local rules. *See* Notice to Pro Se Litigant Opposing Mot. for Summ. J. as Required by Standing Order Governing Mots. for Summ. J. ("Summary Judgment Notice"), ECF No. 110-2. While Omni sent the Summary Judgment Notice by Federal Express to Plaintiff's preferred address and

electronically to Plaintiff's email account, *see id.* at 3, Plaintiff never responded to Omni's Motion within the fourteen days required pursuant to Local Rule CV-7(D)(2), or anytime thereafter.[4]

On May 30, 2025, Plaintiff filed his motion for summary judgment. *See* Pl.'s Mot. for Summ. J., ECF No. 120. Omni responded to Plaintiff's Motion on June 13, 2025. *See* Def.'s Resp. to Pl.'s Mot. for Summ. J., ECF No. 127. All pending motions are ripe for resolution.

## II.    DISCUSSION

### A.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

The moving party bears the initial burden of "informing the district court of the basis for its motion[] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he moving party may [also] meet its burden by simply pointing to an absence of evidence to support the nonmoving party's case." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005). "In considering summary judgment, we must view the evidence in the light most favorable to the nonmoving party." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-

---

[4] For all citations to court documents, including the parties' motions, the Court uses the pagination assigned by the Court's electronic docketing system.

88 (1986)). The court resolves factual controversies in favor of the nonmoving party, but factual controversies require more than "conclusory allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Further, when reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh evidence. *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478–79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Once the movant has made a properly supported motion, the burden shifts to the nonmovant to establish the existence of a genuine issue for trial. *Zenith Radio Corp.*, 475 U.S. at 585-87; *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995).

The nonmovant "may not rest upon mere allegations contained in the pleadings but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57 (1986)). "Furthermore, the nonmoving party is required to identify specific evidence in the record and to articulate the precise way that evidence supports her claim." *Bush v. Kadirnet, LLC*, 1:18-CV-1024-RP, 2020 WL 824106, at *1 (W.D. Tex Feb. 19, 2020) (citing *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006)). Courts applying this standard have rejected vague or unsupported claims as insufficient. *See, e.g.*, *Metro. Direct Prop. & Cas. Ins. Co. v. United States*, No. 4:07-CV-210, 2008 WL 2775852, at *1 (E.D. Tex. July 15, 2008) (granting summary judgment where the nonmovant failed to cite specific facts and relied on conclusory assertions). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citing *Skotak v. Tenneco Resins,*

*Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir. 1992)). Once the nonmoving party has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find in its favor, summary judgment will be granted. *Kadirnet, LLC*, 2020 WL 824106, at *1 (citing *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 175 (5th Cir. 2000)).

### B.  OMNI'S MOTION

Before proceeding with its analysis, the Court discusses the consequences of Plaintiff's failure to respond to Omni's dispositive motion. On May 1, 2012, United States District Judge Kathleen Cardone issued a Standing Order requiring any represented party moving for summary judgment against a party proceeding *pro se* to notify the unrepresented party in a separately filed document the consequences of failing to respond to a dispositive motion under the Local Court Rules and the Federal Rules of Civil Procedure. *See* May 1, 2012, Standing Order Regarding Mots. for Summ. J. 2-3.[5]

Among other information, the Summary Judgment Notice contained the following warning in all capital letters:

> The Defendant's motion may be granted and your claims may be dismissed without further notice if you do not file papers as required by Rule 56 of the Federal Rules of Civil Procedure and this Court's Standing Order Governing Motions for Summary Judgment. Copies of these rules are attached to this notice, and you should review them very carefully.

*Id.*

Omni sent an electronic copy of its Summary Judgment Notice to Plaintiff's email address, and a hard copy to Plaintiff's preferred mailing address. *See id.* at 3. Despite these actions,

---

[5] Judge Cardone's standing order is available at https://www.txwd.uscourts.gov/wp-content/uploads/2022/12/Standing-Order-Regarding-Motions-for-Summary-Judgment.pdf

however, Plaintiff never responded to Omni's Motion, instead, filing his own motion for summary judgment on May 30, 2025. *See* Pl.'s Mot. for Summ. J., ECF No. 120.[6]

Under Federal Rule of Civil Procedure 56(e), "[i]f a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." *See* Fed. R. Civ. P. 56(e)(2)-(3). Here, because Plaintiff has failed to introduce any evidence contradicting Omni's version of the facts in a response, the Court accepts Omni's version of the facts as true. *See id.*; *see also Danos v. Union Carbide Corp.*, 541 F. App'x 464, 466 (5th Cir. 2013) (citing *Savers Fed. S. & L. Ass'n v. Reetz*, 888 F.2d 1497, 1497, 1501 (5th Cir. 1989) ("If a party fails to oppose a motion for summary judgment, then the district court is permitted to consider the facts listed in support of the motion as undisputed and grant summary judgment if those facts would entitle the movant to judgment as a matter of law.")). Accordingly, the Court's task is to analyze whether Omni is entitled to judgment as a matter of law based on the undisputed facts in the record. *See* Fed. R. Civ. P. 56(e)(2); *Danos*, 541 F. App'x at 466.

### C. PLAINTIFF'S *PRO SE* STATUS

*Pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys and are entitled to a liberal construction, including all reasonable inferences that can derived from them. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam). That said, "a *pro se* party is in no way exempted from compliance with the relevant rules of procedure and

---

[6] To the extent Plaintiff's Motion for Summary Judgment is considered as a response, it lacks competent summary judgment evidence. Plaintiff simply makes conclusory statements in his attached affidavits. Unsupported, conclusory speculation and self-serving assertions are insufficient to create a genuine issue of material fact. *Williams v. Barnhill's Buffet, Inc.*, 290 F. App'x 759, 762 (5th Cir. 2008) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)); *Huff v. Neal*, 555 F. App'x 289, 294 (5th Cir. 2014) ("[C]onclusory allegations supported by conclusory affidavits are insufficient to require a trial.") (citing *Shaffer v. Williams*, 794 F.2d 1030, 1033 (5th Cir. 1986)).

substantive law." *Kaswatuka v. United States Dep't of Homeland Security*, 7 F.4th 327, 331 (5th Cir. 2021) (quoting *Quevedo v. Army & Air Force Exch. Serv.*, 234 F.3d 29, 2000 WL 1568186, at *1 (5th Cir. 2000) (per curiam)).

### D.   ANALYSIS

Defendant argues that it is entitled to summary judgment on all of Plaintiff's claims because "all actions taken with respect to Plaintiff's employment were taken for legitimate, non-discriminatory, non-retaliatory reasons. Specifically, Omni Logistics terminated Plaintiff due to his repeated insubordination and refusal to do the job duties of his position as a Material Handler." Mot. 5. The Court will address each of Plaintiff's claims in turn.

### 1.   Race Discrimination Based on Work Assignments and Termination

Plaintiff brings race discrimination claims under Title VII and the Texas Labor Code. A Title VII employment discrimination case based on circumstantial evidence is evaluated under the *McDonnell Douglas* burden-shifting framework. *See Espinoza v. Brennan*, EP-14-CV-290-DB, 2016 WL 7176663, at *4 (W.D. Tex. Dec. 7, 2016) (Title VII); *Jenkins v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010) (Title VII and Section 1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).   First a Plaintiff must present a prima facie case of discrimination. This requires a plaintiff to show that (1) he is a member of a protected group; (2) he was qualified for the position at issue; (3) he was discharged or suffered some adverse employment actions by the employer; and (4) he was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. *Roberson-King v. Louisiana Workforce Comm'n, Off. of Workforce Dev.*, 904 F.3d 377, 381 (5th Cir. 2018) (quoting *Morris v. Town of Indep.*, 827 F.3d 396, 400 (5th Cir. 2016)). "After the plaintiff establishes a prima facie case, 'the burden shifts to the employer to provide a legitimate, non-discriminatory

reason for the employment decision.'" *Id.* (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). If the defendant articulates a legitimate reason, the burden shifts back to the plaintiff to show the reason is "merely pretextual." *Id.* In conducting a pretext analysis, the court does not "engage in second-guessing of an employer's business decisions." *Id.* (quoting *LeMaire v. La. Dep't. of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007)).

### i.   Hostile Work Environment Claims

A prima facie case of a racially hostile work environment under Title VII, Plaintiff must show he "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

Here, it is undisputed that Plaintiff belongs to a protected group as an African-American man. Plaintiff alleges he was subjected to a hostile work environment through "insults, arduous assignments, unfair treatment, undue discipline, assault, humiliation by management" and that the "treatment was not experienced by other [non-African-American] employees." Pl.'s Am. Compl. ¶¶62-63. Plaintiff also alleges he was deceived into taking "on work responsibilities that were not his," and that others would state "*que raro*"[7] to subject him to a "mind game." *Id.* ¶¶ 64-65.

Defendant contends that Plaintiff cannot plead a claim of hostile work environment because he cannot evidence any harassment that occurred based on race. Mot. 12. Defendant argues that to the extent Plaintiff identified conduct he contends is harassing, the conduct is "by

---

[7] In English, "that's strange." Que Raro, SPANISHDICTIONARY.COM, https://www.spanishdict.com/translate/qu%C3%A9%20raro (last visited Feb. 16, 2026).

its very nature non-discriminatory and without racial animus." *Id.* 12-13. Defendant further argues that Plaintiff did not raise the issue that "his coworkers were making discriminatory comments to him or to each other in reference to him, or that any such statements were sufficiently severe or pervasive to alter the conditions of his employment or create an abusive working environment." *Id.* 13.

Plaintiff's primary example of racial harassment was that Felipe Moreno, his supervisor when first starting at Omni in 2019, would refer to Plaintiff as "*el vato*"[8] or "*hermano.*"[9] Mot. Ex. S, 129:4-139:19; PUF ¶11. Felipe Moreno has submitted a sworn declaration that he does not recall referring to Plaintiff as "*el vato*" or "*hermano*" and that if he ever did, those phrases "do not have a negative or racist connotation in [his] Mexican culture." Mot. Ex. Q (Decl. of Felipe Moreno).

Assuming *arguendo* that Felipe Moreno's statements were racial in nature, they do not support a claim of discrimination. To determine if comments in the workplace are direct evidence or "stray remarks" of racial, the Court looks at four factors: "whether the comments are (1) related to the P's protected characteristics; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision." *Etienne v. Spanish Lake Truck & Casino Plaza, LLC*, 778 F.3d 473, 476 (5th Cir. 2015) (citing *Wallce v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001)). However, when a claim is based on circumstantial evidence alone the Court may apply a two-part test to determine whether the statements were "stray remarks." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012).

---

[8] In English, "the dude." El Vato, SPANISHDICTIONARY.COM, https://www.spanishdict.com/translate/el%20vato (last visited Feb. 16, 2026).

[9] In English, "brother." Hermano, SPANISHDICTIONARY.COM, https://www.spanishdict.com/translate/hermano (last visited Feb. 16, 2026).

This stray remarks test instructs that "a plaintiff need only show (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." *Id.* (first citing *Laxton v. Gap Inc.*, 333 F.3d 572, 583 (5th Cir. 2003); and then citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000)). This is otherwise known as a "cat's paw" theory of liability. The Fifth Circuit when adopting this theory of liability explained " 'If the [formal decisionmakers] acted as the conduit of [the employee's] prejudice –his cat's paw—the innocence of the [decisionmakers] would not spare the company from liability." *Russell*, 235 F.3d at 227 (citing *Shager v. Upjohn Co.*, 913 F.2d 39, 405 (7th Cir. 1990)).

Defendant argues that Plaintiff cannot satisfy either part of the stray remarks test. Mot. 14. There is no racial animus with the terms "*el vato*" or "*hermano.*" In English their equivalents are "the dude" or "brother," and the Court is not aware of any derogatory or racial meaning for these words in Spanish. Additionally, Felipe Moreno does not recall ever making such statements toward or about Plaintiff, and if he did he is not aware of any negative or racial connotation to the terms. Mot. Ex. S, 129:4-139:19; PUF ¶11. Furthermore, Shannon's termination notice does not contain any mention of Felipe Moreno nor is there any evidence proffered by Plaintiff to show that Felipe Moreno had any role in Plaintiff's adverse employment action, his termination. Therefore, the Court **RECOMMENDS** that Defendant be **GRANTED** Summary Judgment on Plaintiff's Hostile Work Environment Claim.

### ii. Pretext for Race Discrimination Claims

Even if Plaintiff proved a prima facie case of race discrimination, the burden would then shift to Omni to assert a legitimate, nondiscriminatory purpose for his termination. *Laxton,* 333 F.3d at 578; *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000). "If the employer is able to articulate a non-discriminatory reason for the termination, the burden shifts back to the

14

plaintiff to demonstrate that the non-discriminatory reason was a mere pretext for unlawful discrimination." *Braun v. Manpower Grp. US Inc.*, NO. 1:19-CV-1122-DAE, 2022 WL 22871460, at \*5 (W.D. Tex. Feb. 16, 2022) (citing *McInnis v. Alamo Cmty. College Dist.*, 207 F.3d 276, 280 (5th Cir. 2000)). A Plaintiff can meet this evidentiary burden by "either providing evidence of intentional discrimination or evidence establishing 'the falsity of the employer's explanation.'" *Id.* (citing *Bryan v. McKinsey & CO.*, 375 F.3d 358, 360 (5th Cir. 2004)). However, to demonstrate pretext in support of a wrongful termination claim, Plaintiff must show more than mere "self-serving, subjective, or speculative allegations; a plaintiff must provide sufficiently specific, substantive reasons for his claim of pretext." *Schindel v. Edwards Aquifer Auth.*, NO. SA-22-CV-00960-KJP, 2024 WL 1814012, at \*6 (W.D. Tex. Apr. 23, 2024) (citing *Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 119 (5th Cir. 1993). Further, "even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason." *Durham v. Oil States Energy Services, LLC*, MO:19-CV-00215-DC, 2021 WL 2742770, at \*6 (W.D. Tex. Jan. 21, 2021) (citing *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991)). "'The burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Id.* (quoting *Reeves*, 530 U.S. 133, 142 (2000)).

Plaintiff "must rebut each non-discriminatory reason articulated by the employer" to prove pretext. *Straughn v. Texas Powertrain Assembly, LLC*, No. 5:13-CV-708-DAE, 2014 WL 5426489, at \*17 (W.D. Tex. Oct. 22, 2014) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). "Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *Nobles v. Cardno, Inc.*, 549 F. App'x 265, 269 (5th Cir. 2013) (citing *Lemaire v. Louisiana Dep't of Transp. & Development*, 480 F.3d at 391).

Throughout his complaint and deposition, Plaintiff agrees with Omni's stated reason of insubordination for his termination. As Omni points out, in many of Plaintiff's own written accounts of the disputes about his work, Plaintiff attests to not performing his job duties. *See* Mot. Ex. C (Plaintiff's statement "there was nothing to do immediately necessary to wait on others"); *See also* Ex. S, 308:5-309:6 (Plaintiff stating that he "argued his points in the meetings about these" in discussions regarding disciplinary actions).

While Plaintiff contends that he did not commit errors in his work product, at his deposition when questioned about whether he makes errors, Plaintiff responded "I make errors all the time as an employee in the department." Mot. Ex. S, 311:23-25. Plaintiff was then asked if he understood that "from this written disciplinary notice, that the state of the problem up at the top is circled as 'unsatisfactory performance,' right?" Mot. Ex. S, 312:8-11. Plaintiff responded in the affirmative and indicated that he understood that the Defendant disciplined him because of the Defendant's perceived errors attributed to the Plaintiff. Mot. Ex. S, 312:19-25.

Therefore, Plaintiff cannot show that Defendants' reason for terminating Plaintiff was pretextual in the face of Defendants' documented instances demonstrating his consistent insubordination. The Plaintiff, therefore has not met his burden, under the second prong of the *McDonnell Douglas* framework showing pretext on the part of the Defendant. Therefore, the Court **RECOMMENDS** that Defendant be **GRANTED** Summary Judgment on Plaintiff's Race Discrimination Claim

### 2. Retaliation Claims

Plaintiff brings retaliation claims under Title VII and the Texas Labor Code. Plaintiff does not present direct evidence of retaliation, therefore the *McDonnell Douglas* burden shifting framework applies to the retaliation claim. *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 588 (5th Cir. 2020). A prima facie retaliation case requires the Plaintiff to prove: "(1) he engaged in

activity protected by the statute; (2) he suffered an adverse employment action; and (3) a causal connection existed between the protected activity in which he engaged and the adverse action." *Roberts v. Florida Gas Transmission Co., LLC*, 447 F. App'x 599, 602 (5th Cir. 2011); *see also Gorman v. Verizon Wireless Tex., LLC*, 753 F.3d 165, 170 (5th Cir. 2014) (retaliation under Texas Lab. Code); Dailey v. *Shintech, Inc.*, 629 F. App'x 638, 642 (5th Cir. 2015) (Title VII retaliation).

An employee engages in a "protected activity" under Title VII, Section 1981, or the Texas Labor Code when they "1) opposed any practice made an unlawful practice by Title VII; or 2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Hiner v. McHugh*, No. CIV.A. SA-11-CA-0184, 2012 WL 3758129, at *5 (W.D. Tex. Aug. 27, 2012), *aff'd*, 546 F. App'x 401 (5th Cir. 2013); *Surface v. Pacillas*, 797 F. Supp. 3d 692, 704 (W.D. Tex. Aug. 29, 2025); 42 U.S.C. § 2000e-3(a).

Once a plaintiff proves a prima facie case of retaliation, a defendant must then present a legitimate, non-retaliatory reason for the adverse employment action. *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 588 (5th Cir. 2020). "If the defendant does so, 'the plaintiff must adduce sufficient evidence that the proffered reason is a pretext for retaliation. Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred.'" *Clark*, 952 F.3d at 588 (quoting *Nall v. BNSF Railway Co.*, 917 F.3d 335, 349 (5th Cir. 2019)).

Here Plaintiff, in his deposition, argued that he was retaliated against because he was transferred to different departments during his employment with Omni and because of his confrontations with managers who requested he complete tasks that were within his job duties as material handler. Mot. Ex. S, 348:12-349:18. Defendant argues that summary judgment should be

17

granted on Plaintiff's retaliation claim because Plaintiff cannot prove that Omni retaliated against him under any law nor that Plaintiff engaged in a protected activity.

### i. Plaintiff did not Engage in Protected Activity

Plaintiff did not engage in any activity protected by law that Omni could have been aware of during his employment that would rise to the level of supporting a retaliation claim. The closest Plaintiff gets to a protected activity is when he filed his EEOC charge on August 17, 2021. PUF ¶31. However, as noted in the Background section, that occurred *after* he was terminated. Instead, Plaintiff only identifies what he perceives as retaliation, namely transfers within Omni and being assigned tasks by management. "'Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII.'" *Lewis v. Bd. of Supervisors of Louisiana State Univ. & Agricultural & Mechanical*, 134 F.4th 286, 295 (5th Cir. 2025) (quoting *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003)). Here, Plaintiff complains of being transferred within Omni, which is not a protected activity. Mot. Ex. S, 348:12-349:18. Additionally, because Plaintiff's complaints to management did not address his race, Plaintiff did not engage in activity protected under Title VII or the Texas Labor Code.

### ii. Assigning Essential Job Duties is Not an Adverse Employment Action

A plaintiff seeking to prove a retaliatory adverse employment action must show that "'a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 826 (5th Cir. 2019), *abrogated on other grounds by Hamilton v. Dallas Cnty.*, 79 F.4th 494, 502-06 (5th Cir. 2023);

*Wooten v. McDonald Transit Associates, Inc.*, 788 f.3d 490, 499 n.5 (5th Cir. 2015) (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

Here, Defendant argues that Plaintiff repeatedly refused to perform his Material Handler duties. Mot. 17. Defendant rotated Plaintiff through different departments; however, every one of his managers, at some point, had to request Plaintiff to perform his job duties. *Id.* In response, Plaintiff would refuse each time. *Id.*

A reasonable employee would not find rotating to work in different departments within the company materially adverse. Therefore, P was not subject to an adverse employment action with respect to D's request that he work within different departments when required.

### iii. Omni Terminated Plaintiff for Legitimate, Non-Retaliatory Reasons

Insubordination and violation of company policies are legitimate, non-retaliatory reasons for an employer to take action against an employee. *Kitchen v. BASF*, 952 F.3d 247, 253 (5th Cir. 2020); *Price v. Wheeler*, 834 F. App'x 849, 859 (5th Cir. 2020) ("Price's refusal to comply with an order to appear at a colleague's EEOC hearing (and her inability to provide good cause for her absence) constituted an act of insubordination that justified disciplinary action.")); *see also Chaney v. New Orleans Public Facility Mgmt. Inc.*, 179 F.3d 164, 167 (5th Cir. 1999) ("Chaney concedes that he failed to comply with Johnston's orders on August 8, 1996. The policy and procedure manual governing employment at the Convention Center warns that disrespect for a supervisor and failure to follow a direct order are grounds for suspension or discharge."). "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason." *Rodriguez v. City of Corpus Christi*, 129 F.4th 890, 900 (5th Cir. 2025) (quoting Little, 924 F.2d at 97.).

19

Plaintiff was terminated for a repeated pattern of insubordination. PUF, ¶30. After moving Plaintiff to various departments, he continued to be insubordinate. Even after being warned verbally and in writing, Plaintiff's behavior continued. Therefore, Omni's employment actions were taken for legitimate and non-retaliatory reasons.

### iv. Plaintiff Cannot Prove Causation

To succeed, Plaintiff must prove "but for" any actual protected activity, the complained of adverse employment actions would not have occurred. *Alvarez v. Amb-Trans Inc.*, No. SA-11-CV-179-XR, 2012 WL 4103876, at *5 (W.D. Tex. Sept. 17, 2012) (quoting *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 580 (5th Cir. 2004)); *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 782 (Tex. 2018) (retaliation under Texas Labor Code). The "but for" standard requires Plaintiff to prove "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Cole v. Quality Carriers, Inc.*, No. 23-30556, 2024 WL 937053, at *5 (5th Cir. Mar. 5, 2024) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).

Plaintiff cannot prove a "but-for" causal connection or any causal link between his complaint or EEOC charge and his superiors assigning him different work than his peers. A "causal link" is established when the evidence demonstrates some connection between the adverse action and the protected activity. *Richardson v. Univ. of Texas at Austin*, No. A-06-CA-427-SS, 2007 WL 9710042, at *5 (W.D. Tex. July 30, 2007) (citing *Long v. Eastfleld Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996)). At Plaintiff's deposition, Plaintiff testified that Defendant terminated his employment because he was given the right to leave 10 minutes early to catch his preferred bus, but then admitted that there is no reference to him leaving 10 minutes early on his termination document. Ex. S, 347:10-348:5.

Leaving early is not a protected activity under Title VII or the Texas Labor Code. As noted above, "'Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII.'" *Lewis*, 134 F.4th at 295 (5th Cir. 2025) (quoting *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 384 (5th Cir. 2003)). The closest Plaintiff gets to a protected activity is when he filed his EEOC charge on August 17, 2021. PUF ¶31. However, that was after his termination and thus cannot be the "but-for" causal connection between his complaints and termination.

The Plaintiff has not met his burden showing retaliation on the part of the Defendant. Therefore, the Court **RECOMMENDS** that Defendant be **GRANTED** Summary Judgment on Plaintiff's Retaliation Claim.

### 2. Promissory Estoppel Claims

To prove a claim of promissory estoppel, a Plaintiff must prove that the parties in content have "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *Gil Ramirez Group, LLC v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 414 (5th Cir. 2015) (quoting *English v. Fisher*, 660 S.W.2d 521, 524 (Tex. 1983)). "An 'actual promise' is 'an essential element for any promissory estoppel claim,' and there can be no promissory estoppel claim without a 'definite, unconditional promise.'" *Elite Ctr. for Minimally Invasive Surgery, LLC v. Health Care Serv. Corp.*, 221 F. Supp. 3d 853, 863 (S.D. Tex. 2016) (quoting *Davis v. Tex. Farm Bureau Ins.*, 470 S.W.3d 97, 108 (Tex. App. 2015)).

Plaintiff bases his claim on his understanding that he could leave work ten minutes early to catch a bus home. However, Plaintiff does not plead facts that Defendant made an actual, definite, and unconditional promise. Instead, Plaintiff pleads that he and his supervisor made an "oral agreement that he could end his shift 10 minutes early to catch the bus" and later he was

21

subsequently accused of "walking off the job" which led to his termination. Pl.'s Am. Compl. ¶¶52, 54 ECF No. 22. ("Plaintiff made an oral agreement with Defendant, Supervisor Samuel Sanchez that he could end his shift 10 minutes early to catch the bus homes." "Plaintiff adhered to the agreement but in doing so was accused of walking off the job- in the termination notice he received on Oct 29, 2020. The promise had been used to terminate his employment.").

Omni did allow Plaintiff to leave ten minutes early to catch his bus. Mot. Ex. S, 265:1-266:22; *see also* Mot. Ex. H (Plaintiff's signed break schedule). However, Omni still held Plaintiff to the same expectations as other employees. Omni expected Plaintiff to complete his required tasks while at work. Importantly, it is unclear whether Plaintiff's ability to leave through an agreement with his supervisor rises to the level of a "definite, unconditional promise."

Much more significantly, however, is that this agreement – whether informal or definite and unconditional – does not appear to have factored in any manner in Defendant's decision to end Plaintiff's employment. Plaintiff was terminated for insubordination. PUF, ¶30; Mot. Ex. S, 347:10-348:5. There is no mention whatsoever of the agreement with Samuel Sanchez to leave 10 minutes early in the Defendant's termination notice. *See id.* Plaintiff has not met his obligation to show any issues of fact as to promissory estoppel that would warrant any potential recovery. Therefore, the Court **RECOMMENDS** that Defendant be **GRANTED** Summary Judgment on Plaintiff's Promissory Estoppel Claim.

### 3. Interference with Unemployment Benefits Claims

Plaintiff alleges that Omni "caused Plaintiff's unemployment benefits to be cut off after about 1 months of benefits" by submitting "misleading evidence" that the Plaintiff had "returned to work for them." Pl.'s Am. Compl., ECF No. 22, ¶55. He claims he learned of this "deception" when the Texas Workforce Commission "called him to verify his return to work." *Id.* ¶56.

22

To bring a claim of interference with unemployment benefits, Plaintiff must plead and demonstrate exhaustion of administrative remedies before the Texas Workforce Commission and cite the dates for such appeals. "A party claiming to be aggrieved by a final decision of the commission may not obtain judicial review of the decision unless the party has exhausted the party's remedies before the commission." Tex. Labor Code § 212.203(a); *see also Johnson v. Oxy USA, Inc.*, 533 S.W.3d 395, 399 (Tex. App.— Houston [14th Dist.] 2016, no pet.) ("[I]n order for this court to have jurisdiction to review a commission decision, the party claiming to be aggrieved by a final decision of the commission must first have exhausted the available administrative remedies.").

"To have jurisdiction to review a commission decision, the party bringing suit must take two procedural steps. First, the party claiming to be aggrieved by a final decision of the commission must have exhausted the available administrative remedies." *Texas Workforce Comm'n v. City of Hous.*, No. 14-07-00407-CV, 2009 WL 396208, at *2 (Tex. App.—Houston [14th Dist.] Feb. 19, 2009, no pet.) (citing Tex. Lab. Code § 212.203(a)). "Second, a party aggrieved by a final decision of the commission must bring an action in a court of competent jurisdiction against the commission on or after the date on which the decision is final, and not later than 14 days thereafter." *Id.* at *3 (citing Tex. Lab. Code § 212.201(a)).

Plaintiff must establish that he has appealed to both the Appeal Tribunal and the Commissioner; Plaintiff must show that a decision was rendered by each; and must prove that his claim in this Court was filed within fourteen days after the Commissioner's decision. *See McElroy Jr. v. Texas Workforce Comm'n*, No. 2-05- 234-CV, 2006 WL 240239, at *1 (Tex. App. Feb. 2, 2006).

Here, the Texas Workforce Commission ("TWC") decision was made in June 2021, with a fourteen-day appeal period expiring on July 8, 2021. Mot. Ex. R. Plaintiff, however, did not appeal TWC's decision until November 28, 2023, *two years* later and after the date this litigation was filed. *Id.*; IFP Motion, ECF No. 1 (filed on 10/13/2023); Complaint, ECF No. 13 (filed on 12/01/2023). Plaintiff received a dismissal of his attempt to appeal TWC's decision in February 2024.  Mot. Ex. R. ("The statutory period in which an appeal could be filed expired on July 08, 2021. This appeal was filed on November 28, 2023, and is therefore late. The Commission is without jurisdiction to hear the appeal, and it is dismissed.").

Plaintiff failed to exhaust his administrative remedies concerning the alleged interference of unemployment benefits. Moreover, he did not timely file his claim of interference with his employment benefits in this Court. Plaintiff filed this case two years after TWC's initial decision but before having filed a formal appeal to the decision.

Plaintiff has not properly exhausted administrative remedies in his interference with Unemployment Benefits claim. Therefore, the Court **RECOMMENDS** that Defendant be **GRANTED** Summary Judgment on Plaintiff's Interference with Unemployment Benefits Claim.

### 4.  Breach of Duty, Good Faith, and Fair Dealing Claims

Defendant argues that Plaintiff does not present a valid claim for breach of duty, breach of good faith, or a breach of fair dealing. Mot. 22. Plaintiff argues in his complaint that Omni "willfully sabotaged the employer employee relationship despite his exemplary performance of his duties." Pl.'s Am. Compl. ¶72, ECF No. 22.

"Under Texas law, a claim for breach of the duty of good faith is a tort action that arises from a contract." *Schweiger v. USAA Federal Sav. Bank*, No. SA-17-CV-00660-OLG, 2017 WL 6503660, at *6 (W.D. Tex. 2017) (citing *Collier v. CitiMortgage, Inc.*, No. 3:14-CV-906-M-BN, 2014 WL 418449, at *6 (N.D. Tex. Aug. 22, 2014)). Employer policies do not qualify as contracts,

24

and "breaches" of them do not create causes of action under Texas law. *Brown v. Sabre, Inc.*, 173 S.W.3d 581, 585 (Tex. App. 2005, no pet.) (citing *Vida v. El Paso Employees' Fed. Credit Union*, 885 S.W.2d 177, 180-81 (Tex. App. – El Paso 1994, no writ) ("The long-standing rule in Texas is that an employee without a written employment contract is an employee-at-will, and the employment relationship is terminable at any time by either party, with or without cause.... In numerous cases, discharged employees have attempted to recover for breach of contract by alleging that their employers' personnel manuals contained enforceable promises altering the at-will relationship.... Texas courts have generally rejected this theory, particularly where a specific disclaimer in the employee handbook warns the employee that the manual is intended to provide guidelines only, and does not create contractual rights.")).

This cause of action requires a contract. While Plaintiff alludes to breaches of obligations by the Defendant, he does so without referencing a specific contract, much less a specific contract provision. This cause of action certainly does not encompass general allegations that an employer failed to meet an employee's expectations; the existence of an actual contract is central to this claim. The rule in Texas is absent some contractual relationship, employees are at will. In evidence, the Defendant submitted an "Employment Agreement" addressing the transfer of employment from TEI (the preceding employer) to Omni. But even this document states in no uncertain terms that the Plaintiff is an at-will employee. PUF ¶1.

Even if there was a contract, the Texas Supreme Court has ruled that not all contractual relationships create a duty of good faith and fair dealing. "An actionable duty has been imposed only when there is a special relationship, such as that between an insured and his or her insurance carrier." *City of Midland v. O'Bryant*, 18 S.W.3d 209, 215 (Tex. 2000). "In *City of Midland*, the Texas Supreme Court expressly found that the elements which create a special relationship

25

between an insurer and an insured are absent in the relationship between an employer and an employee." *Sirius Computer Solutions, Inc. v. Sparks*, NO. 5:15-CV-698-DAE, 2016 WL 6078493, at *5 (W.D. Tex. May 4, 2016) (citing *City of Midland*, 18 S.W.3d at 215)). The Court stated "[a] court-created duty of good faith and fair dealing would completely alter the nature of the at-will employment relationship ... and we decline to the change the at-will nature of employment in Texas." *Id.* (citing *City of Midland*, 18 S.W.3d at 216)).

Plaintiff's opinion of Omni's adverse employment action, due to his failure to meet job requirements and failure to follow instructions, fails to state a valid claim for recovery. Therefore, the Court **RECOMMENDS** that Defendant be **GRANTED** Summary Judgment on Plaintiff's Breach of Duty, Good Faith, and Fair Dealing Claims.

### 5.  Assault

Plaintiff alleges that "Defendant's managers had Jesus Cedeno, Felipe Moreno Jr. and Javier Casanova" give him "tainted food" on "three separate incidents," which caused him to "vomit[] after each incident" during business hours while working for Defendant. Pl.'s Am. Compl., ECF No. 22, ¶¶57-61.

In Texas, the definition of assault is the same regardless of whether the charge is pursued in a criminal or civil trial. *Huynh v. Walmart Inc.*, 30 F.4th 448, 456 (5th Cir. 2022) (citing *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627 (Tex. 1967)); *Moore's, Inc. v. Garcia*, 604 S.W.2d 261, 264 (Tex. Civ. App. 1980)). The Texas Penal Code defines assault as follows: (a) A person commits an offense if the person: (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse; (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. Tex. Penal Code § 22.01(a).

26

Here, Plaintiff lacks evidence of any injury. He admits he experienced vomiting after eating food but suffered no lasting or serious injury. Pl.'s Am. Compl. ¶60, ECF No. 22. Additionally, he provides no details as to what the food was, or when it was provided. Plaintiff alleges that three managers (Jesus Cedeno, Felipe Moreno Jr. and Javier Casanova) "knew of the assault before it happened based on their behaviors and statements afterwards." *Id.* ¶58.

Plaintiff has not plead facts indicating anyone intentionally tainted with the food to make him sick nor facts that would indicate imminent harm to him. What Plaintiff presents are his personal records of the events and testimony indicating that he felt sick after eating food offered to him in different incidents. Mot. Ex. S, 345:1-347:9.

Plaintiff's testimony, amounting to unsupported speculation that his coworkers might have tainted food offered to him, falls far short of a genuine issue of fact. Therefore, summary judgment should be granted with regard to Plaintiff's claim for assault.

Assuming *arguendo* that the incidents were to be deemed an assault or battery, Plaintiff would still need to prove that Omni is liable under the doctrine of respondeat superior. To prevail on a claim against an employer pursuant to the respondeat superior doctrine, the plaintiff must establish: "(1) an agency relationship existed between the employee/tortfeasor and the defendant; (2) the employee committed a tort against the plaintiff; and (3) the tort was committed in the course and scope of the employee's authorized work duties." *See Goodyear Tire and Rubber v.* Mayes, 236 S.W.3d 754, 757 (Tex. 2007).

Here, the first element of respondeat superior was established. Although there is a dispute over whether an Omni employee committed a tort, there is no evidence that the food was given to Plaintiff by his employer, or that this was authorized or anticipated by the Defendant as part of its employee's employment duties. Thus, Plaintiff fails to establish the third element of this claim.

Therefore, the Court **RECOMMENDS** that Defendant be **GRANTED** Summary Judgment on Plaintiff's Assault claim.

### III.   CONCLUSION

**IT IS THEREFORE RECOMMENDED** that Defendant's Motion for Summary Judgment is **GRANTED.**

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DISMISSED AS MOOT.**

It is also **ORDERED** that the Clerk of the Court **MAIL**, by **certified mail**, return receipt requested, a copy of this Order to Plaintiff at the following address:

2825 Grant Ave.

Apt. 3

El Paso, TX 79930

**SIGNED** and **ENTERED** this 18th day of February, 2026.

_____
MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE

### NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**